# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

WELK BIOLOGY CO., LTD.,

    Plaintiff

v.

HAKUMO LLC, et al.,

    Defendants

AND ALL RELATED COUNTERCLAIMS

Case No.: 2:24-cv-01613-APG-NJK

**Order (1) Granting JWAY LLC and Huang's Motions to Dismiss for Lack of Personal Jurisdiction, (2) Granting in Part Welk, Lin, and Cheng's Motions to Dismiss, and (3) Granting Leave to Amend**

[ECF Nos. 34, 35, 36, 37]

Plaintiff Welk Biology Co., Ltd. sues defendant Hakumo LLC for breach of contract and related claims, alleging that Hakumo has failed to pay for approximately $3 million worth of products that Welk shipped to Hakumo and that Hakumo has interfered with Welk's prospective deal with another distributor. ECF No. 1. Hakumo counterclaims against Welk, and adds as counterdefendants Welk's principals, Yung-Siang Lin and Chien-Tse Cheng; Cheng and Lin's other company, JWAY Foods LLC; and a JWAY LLC sales representative, Jennifer Huang.

In a nutshell, Hakumo contends that it and Welk orally agreed that Hakumo would be Welk's exclusive distributor of "JWAY"[1] branded food and beverage products in the United States. Hakumo asserts that Welk reneged on the deal and formed JWAY LLC to become Welk's new U.S. distributor. According to Hakumo, Welk and the other counterdefendants sought to usurp the business Hakumo built by interfering with Hakumo's business relationships and taking over the JWAY online storefront on Amazon.com.

---

[1] I use JWAY LLC to refer to the counterdefendant and JWAY to refer to the products and trademarks.

JWAY LLC and Huang move to dismiss all counterclaims against them based on lack of personal jurisdiction. JWAY LLC and Huang also join Welk, Lin, and Cheng in moving to dismiss all but two counterclaims against them on a variety of grounds.[2]  Hakumo concedes some counterclaims should be dismissed, but generally opposes the motions.

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motions.  I grant JWAY LLC and Huang's motions to dismiss for lack of personal jurisdiction, with leave to amend.  I grant in part Welk, Cheng, and Lin's motions to dismiss Hakumo's claims as set forth in this order, with leave to amend.

# I.  ANALYSIS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

But where a party alleges fraud, a higher pleading standard applies.  Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting

---

[2] After the counterdefendants moved to dismiss, Hakumo filed an amended answer and counterclaims.  The parties agreed that the amendment did not affect the counterclaims, so the motions to dismiss should remain pending. ECF No. 57 at 3.  I therefore consider the motions to dismiss even though an amended pleading typically supersedes the prior version and renders pending motions to dismiss moot.  I cite to the amended answer and counterclaims (ECF No. 58), as that is the operative pleading.

1    fraud or mistake." "To properly plead fraud with particularity under Rule 9(b), a pleading must

2    identify the who, what, when, where, and how of the misconduct charged." *In re Cloudera, Inc.*,

3    121 F.4th 1180, 1187 (9th Cir. 2024) (quotation omitted). The pleading "must provide an

4    account of the time, place, and specific content of the false representations as well as the

5    identities of the parties to the misrepresentations." *Id.* (quotation omitted). And it "must explain

6    what is false or misleading about the purportedly fraudulent statement, and why it is false." *Id.*

7    (quotation omitted). Falsity "cannot rely on hindsight." *Id.* Rather, the pleading "must explain

8    why the statements were false or misleading at the time they were made." *Id.* (quotation

9    omitted).

10         **A. Personal Jurisdiction**

11         JWAY LLC and Huang move to dismiss for lack of personal jurisdiction. JWAY LLC

12    argues that the counterclaims allege that it is a Washington limited liability company and there is

13    no allegation that it directed any activity at Nevada.[3] Huang argues that the counterclaims allege

14    that she resides in Texas and there are no allegations that she expressly aimed her conduct at

15    Nevada. Rather, she asserts, the counterclaims allege only that she wrote letters of introduction

16    to brokers for Welk and JWAY, and that she told one of those brokers, Harvest Group, that Welk

17    had formally terminated its association with Hakumo. She asserts that the first identified

18    communication did not mention Hakumo and was not otherwise aimed at Nevada. As for the

19

20

21

---

22    [3] In its reply brief, JWAY LCC argues that the exercise of jurisdiction over it is not reasonable.
      ECF No. 49 at 8-9. JWAY did not raise this argument in its motion even though it bears the

23    burden on this factor of the personal jurisdiction test, so I do not consider it. *Zamani v. Carnes*,
      491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the
      first time in a reply brief.").

1  second, she asserts that merely mentioning Hakumo does not aim her conduct at Nevada.  She

2  further argues that Hakumo's claims do not arise out of her communication to Harvest Group.[4]

3       Hakumo responds that it has plausibly alleged JWAY LLC and Huang engaged in

4  intentional acts expressly aimed at Nevada, and Hakumo suffered the harm in Nevada because it

5  is a Nevada entity.  Hakumo contends that it has plausibly alleged that JWAY LLC and Huang

6  intentionally interfered with Hakumo's customer and business relationships and engaged in

7  business disparagement, and Hakumo notes that JWAY LLC and Huang did not move to dismiss

8  Hakumo's business disparagement claim beyond arguing that the court lacks personal

9  jurisdiction.  Finally, Hakumo asserts that Nevada recognizes the conspiracy theory of personal

10 jurisdiction.  In reply, the defendants do not challenge that Hakumo could rely on a conspiracy

11 theory of personal jurisdiction, but they argue that Hakumo has not adequately alleged a

12 conspiracy.

13      "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears

14 the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach

15 Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  If the motion to dismiss is based on written

16 materials rather than an evidentiary hearing, I must determine whether the plaintiff's "pleadings

17 and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger v. Fred

18 Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotation omitted).  In deciding whether

19 the plaintiff has met his burden, I must accept as true the counterclaim's uncontroverted

20 allegations. *Id.*

21

22

23

---

[4] Huang did not argue in her motion that the exercise of jurisdiction would be unreasonable, and she bears the burden of showing this factor in the specific personal jurisdiction test.

1    "The general rule is that personal jurisdiction over a defendant is proper if it is permitted

2 by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process."

3 *Pebble Beach Co.*, 453 F.3d at 1154.  Nevada's long-arm statute permits the exercise of

4 jurisdiction on any basis consistent with federal due process. Nev. Rev. Stat. (NRS) § 14.065(1).

5 Due process requires that to exercise personal jurisdiction over a defendant, the defendant must

6 "have certain minimum contacts with the forum state such that the maintenance of the suit does

7 not offend traditional notions of fair play and substantial justice." *Ranza v. Nike, Inc.*, 793 F.3d

8 1059, 1068 (9th Cir. 2015) (quotation omitted).

9    Personal jurisdiction over a defendant may be based on general or specific jurisdiction.

10 *Id.*  Hakumo does not assert JWAY LLC or Huang are subject to general jurisdiction in Nevada,

11 so I address only specific personal jurisdiction.

12    The Ninth Circuit has established a three-prong test for analyzing a claim of specific

13 personal jurisdiction:

14    (1) The non-resident defendant must purposefully direct his activities or
     consummate some transaction with the forum or resident thereof; or perform
15    some act by which he purposefully avails himself of the privilege of conducting
     activities in the forum, thereby invoking the benefits and protections of its laws;
16    (2) the claim must be one which arises out of or relates to the defendant's forum-
     related activities; and
17    (3) the exercise of jurisdiction must comport with fair play and substantial justice,
     i.e. it must be reasonable.

18

19 *Schwarzenegger*, 374 F.3d at 802 (quotation omitted).  "The plaintiff bears the burden of

20 satisfying the first two prongs of the test." *Id.*  If it succeeds, then the defendant must "present a

21 compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (quotation

22 omitted).

23

Under the first prong, "to be subject to specific jurisdiction the defendant must purposefully direct its activities toward the forum state, purposefully avail itself of the privileges of conducting activities there, or engage in some combination thereof." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088 (9th Cir. 2023) (quotation omitted). When the claims at issue are torts and the defendant's conduct "primarily occurs outside the forum state, [I] generally apply the purposeful direction test and look to whether the defendant expressly aimed acts at the forum state knowing that they would harm the plaintiff there." *Id.* To purposefully direct conduct at the forum state, "the defendant must have allegedly (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162-63 (9th Cir. 2023) (quotation omitted). The defendant's act may be directed at Nevada "even if it occurred elsewhere." *Id.* at 1163. In contrast, a defendant purposefully avails herself of the forum state when she "purposefully avails [herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, and in return submits to the burdens of litigation in the State." *Id.* (simplified). Because Hakumo's claims against Huang and JWAY LLC are torts[5] and their alleged conduct took place outside Nevada, the purposeful direction test is more applicable, but I consider both tests.

---

[5] Hakumo asserts the following claims against JWAY LLC and Huang: promissory estoppel, unjust enrichment, tortious interference with contractual relationships, tortious interference with prospective contractual relationships, business disparagement, violation of Nevada consumer fraud and deceptive trade practices acts, and civil conspiracy. Hakumo also asserts claims for conversion against JWAY LLC. To the extent the promissory estoppel claim is related to Hakumo's contract claims, Hakumo agreed to dismiss its promissory estoppel claim against JWAY LLC and its promissory estoppel and unjust enrichment claims against Huang. ECF Nos. 41 at 11; 42 at 13.

1   In analyzing specific jurisdiction, I focus "on the relationship among the defendant, the

2   forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (simplified).  That

3   "relationship must arise out of contacts that the defendant himself creates with the forum State."

4   *Id.* at 284 (simplified).  It cannot be based on the "random, fortuitous, or attenuated contacts" the

5   defendant "makes by interacting with other persons affiliated with the State," or on the plaintiff's

6   "unilateral activity." *Id.* at 286 (simplified).  The "defendant's suit-related conduct must create a

7   substantial connection with the forum State." *Id.* at 284.  Thus, the "analysis looks to the

8   defendant's contacts with the forum State itself, not the defendant's contacts with persons who

9   reside there." *Id.* at 285.

10

11          1.  Hakumo has not plausibly alleged purposeful availment or direction by either
             JWAY LLC or Huang.

12   Hakumo has not plausibly alleged JWAY LLC or Huang purposefully availed themselves

13   of Nevada.  There are no allegations they have ever been physically present in the state or

14   otherwise availed themselves of the benefits and protections of Nevada's laws.

15   Hakumo also has not made a prima facie showing that JWAY LLC or Huang

16   purposefully directed their conduct at Nevada.  JWAY LLC engaged in the intentional act of

17   hiring Huang, and Huang, as JWAY LLC's sales representative, engaged in intentional acts by

18   communicating with Hakumo's brokers. *See* ECF No. 58 at 20-22, 35-37.  But there are no

19   allegations that Huang or JWAY LLC expressly aimed those acts at Nevada.  Hakumo does not

20   allege that JWAY LLC or Huang initiated any communication from Nevada, nor does it allege

21   that any of the companies or individuals are based in, or were contacted in, Nevada.  Instead,

22   Hakumo relies on the fact that it is a Nevada company who allegedly was harmed by those

23   communications.  But the relevant relationship must arise out of contacts that JWAY LLC and

Huang created with Nevada.  It cannot be based solely on the fortuity that this is where Hakumo is based. *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) ("Express aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because the plaintiff cannot be the only link between the defendant and the forum."  (quotation omitted)); *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (stating that "a mere injury to a forum resident is not a sufficient connection to the forum" (quotation omitted)).  Hakumo therefore has not established a prima facie case of personal jurisdiction over JWAY LLC or Huang based on their contacts with the state.

### 2.  Hakumo has not established personal jurisdiction against Huang or JWAY LLC based on the conspiracy theory of personal jurisdiction.

"A conspiracy theory of personal jurisdiction provides that a nonresident defendant who lacks sufficient minimum contacts with the forum may be subject to personal jurisdiction based on a co-conspirator's contacts with the forum." *Tricarichi v. Coop. Rabobank, U.A.*, 440 P.3d 645, 653 (Nev. 2019).  The theory "is based on the time-honored notion that the acts of a conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 269-70 (2d Cir. 2023) (quotation omitted).  The Supreme Court of Nevada has held that "Nevada's long-arm statute encompasses a conspiracy theory of personal jurisdiction." *Tricarichi*, 440 P.3d at 653.  Thus, under Nevada law, "conspiracy allegations may provide a basis for specific personal jurisdiction when the acts of co-conspirators are sufficient to meet minimum contacts with Nevada and the co-conspirators reasonably expected at the time of entering into the conspiracy that their actions would have consequences in Nevada." *Id.* (simplified).

1      The Ninth Circuit has not adopted or rejected the conspiracy theory of personal

2 jurisdiction, nor has it indicated whether it complies with due process under federal law even if

3 allowed by state law. *See Underwager v. Channel 9 Australia*, 69 F.3d 361, 364 (9th Cir. 1995)

4 (declining to address whether the theory can support personal jurisdiction because the plaintiff

5 failed to allege facts to show a conspiracy); *Chirila v. Conforte*, 47 F. App'x 838, 843 (9th Cir.

6 2002) (same).  Other circuits have adopted it. *See In re Platinum & Palladium Antitrust Litig.*, 61

7 F.4th at 270; *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013); *Melea, Ltd. v.

8 Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007); *Textor v. Bd. of Regents of N. Ill. Univ.*, 711

9 F.2d 1387, 1392 (7th Cir. 1983).  The Tenth Circuit has questioned whether the theory comports

10 with both due process and Supreme Court authority that the relevant inquiry is the defendant's

11 own minimum contacts with the forum. *Melea, Ltd.*, 511 F.3d at 1069-70.  Despite these

12 reservations, the Tenth Circuit has confirmed the theory can support personal jurisdiction, but it

13 "requires at least one of the conspirators to have pursued the conspiracy within the forum state."

14 *Newsome v. Gallacher*, 722 F.3d 1257, 1265-66 (10th Cir. 2013).

15      I agree with the circuits who have held that, under certain circumstances, the conspiracy

16 theory of personal jurisdiction can support specific personal jurisdiction under both due process

17 and Supreme Court caselaw directing courts to look at the defendants' minimum contacts with

18 the state.  To establish personal jurisdiction under the conspiracy theory, Hakumo must allege

19 "that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-

20 conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to

21 subject that co-conspirator to jurisdiction in that state." *In re Platinum & Palladium Antitrust

22 Litig.*, 61 F.4th at 270.  Showing an overt act in the forum is "not a difficult requirement to meet"

23 because "[a]n overt act is any act performed by any conspirator for the purpose of accomplishing

the objectives of the conspiracy." *Id.* at 271 (quotation omitted).  However, the plaintiff must

plausibly allege overt acts taken within the forum that were done in furtherance of the

conspiracy. *FC Inv. Grp. LC v IFX Mkts., Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008), *overruled*

*in part on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 891 (D.C. Cir.

2021).  Additionally, "the conspiratorial contacts [with the forum] must be of the sort that a

defendant should reasonably anticipate being haled into court in the forum as a result of them."

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 125 (2d Cir.

2021) (quotation omitted).  "Bald speculation or a conclusory statement that individuals are co-

conspirators is insufficient to establish personal jurisdiction under a conspiracy theory."

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997)

(simplified).

> *a. Hakumo has not plausibly alleged a conspiracy claim against Huang,*
> *so it cannot rely on the conspiracy theory of personal jurisdiction.*

As discussed below, Hakumo has not plausibly alleged a conspiracy claim against Huang.

Hakumo thus cannot rely on the conspiracy theory of personal jurisdiction as to her.

Consequently, I grant Huang's motion to dismiss the amended counterclaims against her for lack

of personal jurisdiction.

> *b. Hakumo has not sufficiently identified forum-related overt acts to*
> *support conspiracy theory personal jurisdiction as to JWAY LLC.*

As discussed below, Hakumo has plausibly alleged a conspiracy claim against JWAY

LLC.  However, Hakumo has not identified a co-conspirator's overt acts in furtherance of the

conspiracy that had sufficient contacts with Nevada such that JWAY LLC should have

reasonably anticipated being haled into court here as a result.  As discussed below in relation to

1  the deceptive trade practices claim, Hakumo did not dispute that it has not alleged any acts in

2  Nevada, nor is it apparent from the amended counterclaims' allegations that any defendant took

3  any action in Nevada.  Although Hakumo is a Nevada entity, there are no specific allegations of

4  a single act taking place in Nevada or directed at Nevada, or that that act was in furtherance of

5  the conspiracy.

6      In sum, Hakumo has not made out a prima facie case of personal jurisdiction against

7  Huang or JWAY LLC.  Because it is possible that Hakumo could cure these deficiencies through

8  amendment, I grant Hakumo leave to amend. *See Sonoma Cnty. Ass'n of Retired Emps. v.*

9  *Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave

10 to amend is improper unless it is clear that the complaint could not be saved by any amendment."

11 (simplified)).  And because Hakumo has leave to amend, I address these defendants' arguments

12 in relation to the motions to dismiss so Hakumo can amend once as to all defendants if it chooses

13 to do so.

14

15    **B.  Hakumo has plausibly alleged its claims for breach of contract, breach of the
      implied covenant, and breach of an implied-in-fact contract against Welk.**

16    In count one of the amended counterclaims, Hakumo alleges that it and Welk entered into

17 an oral "Exclusive Distribution Agreement through which Welk granted Hakumo the exclusive

18 benefit and right to market, distribute, and sell JWAY branded products in the United States, first

19 at Amazon, but later nationwide to any customers in the United States." ECF No. 58 at 15, 27.

20 In return, Hakumo "agreed to purchase from Welk its existing inventory of JWAY branded

21 products and sell that product in the United States." *Id.* at 15.  Hakumo agreed to sell the

22 products under the JWAY brand, instead of its own "Boba Now" brand, because Welk granted

23 Hakumo exclusive distribution rights in the United States and Welk "agreed to grant Hakumo

11

ownership of the JWAY brand in the United States," including ownership of the JWAY

trademark rights in the United States. *Id.* at 15, 18-19, 23.  The Exclusive Distribution

Agreement "did not contain a term or termination agreement." *Id.* at 16.

This arrangement lasted until mid-2024, when the parties' relationship broke down while

Welk and Hakumo "were negotiating memorializing the Exclusive Distribution Agreement in a

written contract." *Id.* at 11-12.  Hakumo alleges Welk breached the agreement by, among other

things, creating JWAY LLC to market JWAY products in the United States, claiming Hakumo

had no rights in the JWAY trademark, and using the JWAY mark to sell in the United States

without Hakumo's involvement. *Id.* at 27-28.

In count two, Hakumo alleges Welk breached the implied covenant of good faith and fair

dealing by forming JWAY LLC without notice to Hakumo, contacting Hakumo's brokers and

customers, blocking Hakumo from the JWAY Amazon store, and attempting to sell to U.S.-

based customers. *Id.* at 29.  In count three, Hakumo alleges that it and Welk were parties to an

implied-in-fact contract for Hakumo to be the exclusive distributor for JWAY products in the

United States, and that Hakumo would own the JWAY trademark in the United States and the

JWAY store on Amazon.com. *Id.* at 30.  Hakumo brings counts one, two, and three against Welk

only.

Welk argues that Hakumo fails to adequately allege a contract existed because although

the counterclaim refers to an "Exclusive Distribution Agreement," Hakumo does not allege how

and when the alleged oral agreement was formed, so it has not plausibly alleged offer,

acceptance, or a meeting of the minds.  Welk also contends that the agreement's terms as alleged

by Hakumo are too vague and indefinite to form an enforceable contract, particularly as the

agreement is not memorialized in writing.  Welk asserts there are no allegations about the

agreement's duration, what products are covered, price terms, performance requirements, termination procedures, or what rights Welk allegedly conferred by granting Hakumo ownership of the JWAY trademark and brand in the United States.  Alternatively, Welk argues that any oral agreement is barred by the statute of frauds because the agreement allegedly was perpetual, but it was not committed to a writing signed by Welk.  Finally, Welk contends that because Hakumo has not plausibly alleged a contract, it also has not plausibly alleged breach of the implied covenant of good faith and fair dealing arising out of that contract or an implied-in-fact contract.

Hakumo responds that the agreement falls outside the statute of frauds because it was for an indefinite duration.  Hakumo also contends that Welk affirmed the agreement in writing, as shown by a letter signed by Lin that stated Hakumo was Welk's exclusive distributor in the U.S. And Hakumo argues that the statute of frauds does not apply where, as here, the parties at least partially performed the oral agreement.  Hakumo contends that it has adequately alleged the agreement's existence through the identified contract terms, that duration is not a missing term because an agreement can be of indefinite duration, that the missing term regarding termination procedures can be supplied by the U.C.C., and that a contract for the sale of goods can be formed even if the price is not settled.  Hakumo contends that because it has alleged a contract and that Welk circumvented the agreement without notice to Hakumo, it also has plausibly alleged a breach of the implied covenant.[6]  Finally, Hakumo contends it has plausibly alleged an implied-in-fact contract for the same reasons it has alleged an enforceable oral agreement.

---

[6] The counter-defendants raised numerous arguments for the first time in their reply briefs, including that the alleged oral agreement does not satisfy Nevada Revised Statutes § 104.2201; that Hakumo has not alleged a material breach; that the unjust enrichment and conversion claims are duplicative of the breach of contract claim; that Hakumo does not allege causation or unlawful conduct for the tortious interference, conspiracy, and civil theft claims; and that the Nevada Deceptive Trade Practices Act claim does not involve consumer protection issues.  I do not consider arguments raised for the first time in a reply brief.  *See Zamani v. Carnes*, 491 F.3d

1              1.  Hakumo has plausibly alleged the existence of a contract.

2          Under Nevada law, an enforceable contract is formed through "an offer and acceptance,

3    meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

4    "A meeting of the minds exists when the parties have agreed upon the contract's essential

5    terms." *Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 283 P.3d 250, 255 (Nev. 2012).

6    "Which terms are essential depends on the agreement and its context and also on the subsequent

7    conduct of the parties, including the dispute which arises and the remedy sought." *Id.* (quotation

8    omitted).  "A valid contract cannot exist when material terms are lacking or are insufficiently

9    certain and definite." *May*, 119 P.3d at 1257.  But a contract can be formed "when the parties

10   have agreed to the material terms, even though the contract's exact language is not finalized until

11   later." *Id.*  Whether a contract exists is generally a fact question. *Id.*

12         Hakumo has plausibly alleged that it and Welk agreed that if Hakumo sold all of Welk's

13   existing inventory of JWAY branded products, then Hakumo would be Welk's exclusive

14   distributor of all JWAY branded products in the United States.  Hakumo attaches to its

15   counterclaim a letter that Welk signed stating that Hakumo owned the JWAY LOCAL FLAVOR

16   brand in the U.S., was Welk's sole distribution partner in the U.S., and owned the JWAY

17   LOCAL FLAVOR store on Amazon USA.[7]  Although Welk argues that the alleged agreement

18   fails due to lack of definite terms, Nevada law can supply missing terms related to duration,

19   price, and termination if the parties intended to form a contract. NRS § 104.2204(3) ("Even

20   though one or more terms are left open a contract for sale does not fail for indefiniteness if the

21

22   _____
     990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time

23   in a reply brief.").
     [7] Hakumo concedes this letter is not the parties' contract, but it "corroborate[s] Hakumo's
     assertions regarding" the agreement's terms. ECF No. 43 at 5.

parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.").[8]   The absence of these terms may cause the trier of fact to determine that there was no meeting of the minds, and thus no valid contract was formed.  But at this stage of the proceedings, Hakumo has alleged enough to nudge its allegation that the parties intended to form an exclusive distribution agreement over the line from conceivable to plausible, particularly given Welk's signed letter referring to aspects of that alleged agreement. *See also* ECF No. 58 at 19 (alleging that during negotiations of a written agreement, Welk sought to modify the oral agreement "to ensure that Hakumo could not source any products for JWAY branded sales in the U.S. from other suppliers," thus "evidenc[ing] that Hakumo was at all times fully in control of all aspects of the JWAY branded business in the U.S.").

<u>2.  It is plausible that the statute of frauds does not void the oral agreement.</u>

Under Nevada's statute of frauds, certain types of agreements are void unless they are in writing and "subscribed by the person charged therewith." NRS § 111.220.  An agreement "that, by the terms, is not to be performed within 1 year from the making thereof" must be in writing and signed or it is void.  But "substantial law supports that if the contract can be performed within one year and is not otherwise subject to the statute of frauds, it need not be in writing."

---

[8] *See also See Sierra Wine & Liquor Co. v. Heublein, Inc.*, 626 F.2d 129, 131 (9th Cir. 1980) (affirming under Nevada law the district court imputing into an oral distribution agreement that contained no duration or termination terms the provision that the oral contract was "terminable at will after a reasonable period, upon reasonable notice"); NRS § 104.2309(1) ("The time for shipment or delivery or any other action under a contract if not . . . agreed upon shall be a reasonable time."); NRS § 104.2309(2) ("Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party."); NRS § 104.2305(1) ("The parties if they so intend can conclude a contract for sale even though the price is not settled" and a missing price term generally will be "a reasonable price at the time for delivery."); NRS § 104.2306(2) ("A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.").

1    *Grilz v. Sanchez*, No. 60447, 129 Nev. 1119, 2013 WL 5477171, at *2 (Nev. Sep. 26, 2013).

2    The "fact that performance actually exceeds one year does not render the agreement void where

3    the agreement's terms do not indicate that it could not be performed within one year." *AC Media*

4    *Grp., LLC v. Sprocket Media, Inc.*, No. 2:16-cv-02145-APG-GWF, 2017 WL 1458198, at *3 (D.

5    Nev. Apr. 24, 2017); *see also Atwell v. Sw. Secs.*, 820 P.2d 766, 769 (Nev. 1991) (finding that a

6    verbal contract with an indefinite duration was not void under Nevada's statute of frauds where

7    there was nothing to indicate that it could not be fully performed within one year); *Stone v.*

8    *Mission Bay Mortg. Co.*, 672 P.2d 629, 630-31 (Nev. 1983) (holding that an oral employment

9    contract could be terminated within a year without violating the contract's terms, so the statute of

10   frauds did not apply).  "Similarly, the statute of frauds does not void agreements that are 'simply

11   not likely to be performed,' or agreements that are 'simply not expected to be performed, within

12   the space of a year from the making.'" *AC Media Grp.*, 2017 WL 1458198, at *3 (quoting

13   *Stanley v. A. Levy & J. Zentner Co.*, 112 P.2d 1047, 1052 (Nev. 1941)).  The statute of frauds

14   applies to agreements where the parties' "manifest intent and understanding . . ., as gathered

15   from the words used and the circumstances existing at the time [of execution], are that the

16   contract shall not be executed within the year[.]" *Stanley*, 112 P.2d at 1052 (quotation omitted)

17   (holding statute of frauds applied where evidence showed the parties' contract contemplated

18   delivery from at least two grape seasons, which would require more than one year for

19   completion).  The statute of frauds is an affirmative defense. *Jones v. Barnhart*, 506 P.2d 430,

20   430 (Nev. 1973).

21        Hakumo has plausibly alleged facts that suggest the agreement could have been

22   performed in less than one year, even though the alleged agreement lasted for approximately four

23   years in practice.  Hakumo alleges that if it sold Welk's existing inventory of JWAY products,

then it would be Welk's exclusive U.S. distributor.  Nothing in the counterclaim suggests that Hakumo could not have sold the existing inventory within a year.  And it is also possible that an exclusive distribution agreement of indefinite duration could have concluded within a year. Hakumo alleges that U.S. sales were "almost nothing" when the parties commenced their relationship. ECF No. 58 at 11, 16.  If the products did not end up selling or being popular in the U.S., it is possible that Welk could have decided within a year not to distribute any more products in the U.S. *See id.* at 14 (alleging that Welk "was experiencing great difficulty marketing and selling the boba tea products").  Accordingly, Hakumo has plausibly alleged an agreement that is not subject to the statute of frauds.

But even if the alleged oral agreement is subject to the statute of frauds, Hakumo has plausibly alleged facts to support an exception.  "[C]ontracts otherwise unenforceable because of the statute of frauds may be enforced under the doctrine of estoppel." *Alpark Distrib., Inc. v. Poole*, 600 P.2d 229, 230 (Nev. 1979).  Under this theory, the party asserting estoppel "must be influenced by the acts or silence of the other and it must appear that the acts or conduct of the party estopped caused the party relying to act as he would not have acted . . . ." *Zunino v. Paramore*, 435 P.2d 196, 197 (Nev. 1967); *see also Alpark Distrib., Inc.*, 600 P.2d at 230-31 (stating estoppel should apply "whenever unconscionable injury . . . would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract . . . ." (quotation omitted)).

The estoppel theory is based on the policy consideration that if one party "proceeds so far in the execution of a parol contract that he can have no adequate remedy unless the whole contract is specifically enforced, then equity requires such relief to be granted; because, if the rules were otherwise the statute, which is designed to prevent fraud, would itself become an

1   instrument of fraud." *Schreiber v. Schreiber*, 663 P.2d 1189, 1190 (Nev. 1983) (quotation

2   omitted); *see also* Restatement (Second) of Contracts § 139(1) (1981) (stating that "[a] promise

3   which the promisor should reasonably expect to induce action or forbearance on the part of the

4   promisee or a third person and which does induce the action or forbearance is enforceable

5   notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the

6   promise").  One form of estoppel that will preclude application of the statute of frauds under

7   Nevada law is part performance. *Edwards Indus., Inc. v. DTE/BTE, Inc.*, 923 P.2d 569, 574

8   (Nev. 1996) (stating that where there is both a promise to execute a written agreement and part

9   performance, "estoppel is properly invoked"); *see also Gravelle v. Burchett*, 319 P.2d 140, 144

10  (Nev. 1957) ("The proof of the oral agreement and the proof of partial, if not complete,

11  performance by the plaintiffs thereunder and of the partial performance by the defendant amply

12  justified" applying an exception to the statute of frauds.).

13      "Estoppel or part performance must be proved by some extraordinary measure or

14  quantum of evidence." *Zunino*, 435 P.2d at 197.  However, "the complaint need only sufficiently

15  allege the existence of an exception." *Capital Mortg. Holding v. Hahn*, 705 P.2d 126, 127 (Nev.

16  1985); *see also* Fed. R. Civ. P. 8.

17      Hakumo has alleged that the oral agreement existed, that Welk acknowledged some of

18  the alleged agreement's terms through the signed letter, that Welk's principals promised Hakumo

19  that it "would formally be made a partner of Welk," and that both parties performed consistent

20  with the alleged oral agreement for years. *See, e.g.*, ECF No. 58 at 15-20.  Hakumo also alleges

21  that it relied on Welk's promises to focus its efforts on growing the JWAY brand instead of its

22  own "Boba Now" brand. *Id.* at 14-15, 23.  Taking these facts as true, as I must at this stage,

23  Hakumo has plausibly alleged facts from which a reasonable fact finder could find exceptions to

the statute of frauds based on estoppel and part performance combined with a promise to formally execute an agreement.

In sum, I deny Welk's motion to dismiss Hakumo's breach of contract claim because Hakumo has plausibly alleged the existence of an oral agreement that is not subject to the statute of frauds. Welk's only argument for why Hakumo has not plausibly alleged a claim for breach of an implied-in-fact contract is the same argument that Hakumo has not plausibly alleged the contract's terms, so I deny the motion to dismiss count three. Welk's only argument for dismissing Hakumo's claim for breach of the implied covenant of good faith and fair dealing is that Hakumo has not plausibly alleged the existence of a contract. Because Hakumo has plausibly alleged a contract existed, I deny Welk's motion to dismiss that claim as well.

### C. Hakumo has not pleaded its promissory estoppel claim with the requisite particularity.

Count four of the amended counterclaims alleges that the Exclusive Distribution Agreement is enforceable under the doctrine of promissory estoppel because Hakumo substantially changed its position in reliance on Welk's promises and "Welk is estopped from now denying the existence of the contract or its obligations under the contract." ECF No. 58 at 31. This claim is asserted against all five defendants.

The defendants assert that this claim must be pleaded with particularity under Federal Rule of Civil Procedure 9(b) because it involves alleged false promises. They contend that Hakumo's allegations are conclusory as to what promises were made that Hakumo relied on or how Hakumo changed its position on the promises. The individual defendants and JWAY LLC also assert that they cannot determine any promise they made on which Hakumo relied.

Hakumo agrees to voluntarily dismiss without prejudice its promissory estoppel claims against Huang and JWAY LLC. ECF Nos. 41 at 11; 42 at 13.  Thus, I do not address this claim further with respect to them.

As for the other defendants, Hakumo disputes that Rule 9(b) applies because for this claim it does not allege the promises were made with knowing falsity.  Hakumo contends that regardless of which pleading standard applies, it made particularized allegations of promises Welk, Lin, and Cheng made upon which it reasonably relied to its detriment, including promises related to the Exclusive Distribution Agreement and that Hakumo would become a partner in Welk's business outside the U.S.  Hakumo contends that it relied on those promises by building the JWAY brand instead of Hakumo's own Boba Now brand.

### 1. Rule 9(b) applies to this claim because Hakumo alleges fraud.

Although Hakumo contends that this claim does not allege fraud, the claim incorporates all prior paragraphs in the counterclaims, some of which allege false statements that allegedly induced Hakumo to build the JWAY brand instead of its own brand. *See* ECF No. 58 at 23, 31. In particular, paragraph 133 of the counterclaim alleges:

> But for the fraudulent promises of Welk, through Mr. Cheng and Mr. Lin, to Ms. Lee and Ms. Adachi at Hakumo made in 2020 that Hakumo would own the trademark rights to JWAY in the U.S. and be the exclusive distributor of JWAY branded products in the U.S., Hakumo would not have spent five years building brand goodwill and growing revenue in the U.S. to over $30 million annually for the JWAY branded products.  Instead, Hakumo would have exclusively used its own brand, BOBA NOW, and would have built the brand goodwill and sales under its own brand.

*Id.* at 23.  Hakumo describes this paragraph as the "crux" of its promissory estoppel claim. ECF No. 43 at 12.  I therefore evaluate the promissory estoppel claim under Rule 9(b). *See In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023) ("Rule 9(b) applies where a claim is

1  grounded in fraud or sounds in fraud, even if fraud is not an essential element of the cause of

2  action" where the plaintiff "chooses to allege in the complaint that the defendant has engaged in

3  fraudulent conduct." (simplified)).

4

5  <u>2.  Hakumo has not pleaded this claim as to any defendant with the requisite</u>
   <u>particularity.</u>

6  To establish promissory estoppel, the party asserting it must allege (1) the party to be

7  estopped was apprised of the true facts; (2) that party "intend[ed] that its conduct shall be acted

8  upon, or must so act that the party asserting estoppel has the right to believe it was so intended;"

9  (3) the party asserting estoppel was "ignorant of the true state of facts;" and (4) the party

10  asserting estoppel relied "to its detriment on the conduct of the party to be estopped." *Pink v.*

11  *Busch*, 691 P.2d 456, 459-60 (Nev. 1984) (quotation omitted).

12  Hakumo has alleged some of the who (Welk, Cheng, and Lin), the when (from 2020 to

13  2024), and how (discussions in 2020 as the parties initiated their relationship, in a signed letter,

14  and through messaging applications). ECF No. 58 at 15-18.  Hakumo has alleged the

15  representations' content: that Hakumo would be Welk's exclusive distributor in the U.S., own

16  the JWAY brand in the U.S., and become Welk's partner.  And it has alleged reliance, as it

17  asserts that it would not have invested its time and resources building the JWAY brand and

18  instead would have built its own Boba Now brand, which is what was it was looking to do when

19  first introduced to Welk. *Id.* at 10, 14-16, 23.

20  However, Hakumo has not alleged some of the representations with the requisite

21  particularity.  For example, Hakumo does not allege who made representations at the beginning

22  of the relationship or over the ensuing four years; when they did so, how, or where; and what

23  specific representation each defendant made.  For example, it is unclear how the representations

1    were made (in person, or by phone, email, text, or messenger application) or where the

2    representations were made by whatever means.

3           Further, Hakumo does not adequately allege even under a plausibility standard that these

4    defendants knew the true facts (that the promises were false).  Hakumo has not alleged any facts

5    that would make it plausible that each defendant knew each statement was false at the time it was

6    made given that Hakumo alleges that the parties' relationship proceeded successfully for

7    approximately four years. *See Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992)

8    ("The mere failure to fulfill a promise or perform in the future, however, will not give rise to a

9    fraud claim absent evidence that the promisor had no intention to perform at the time the promise

10   was made.").  I therefore dismiss the promissory estoppel claim against Welk, Lin, and Cheng.

11   Because it is possible that Hakumo could cure the pleading deficiencies through amendment, I

12   grant Hakumo leave to amend.

13          **D.  Hakumo has plausibly alleged its unjust enrichment claim.**

14          Count five of the amended counterclaims asserts an unjust enrichment claim in the

15   alternative to Hakumo's contract claims. ECF No. 58 at 31-32.  Hakumo alleges that it conferred

16   a benefit on Welk through Hakumo's efforts in growing the JWAY brand in the United States,

17   including creating the www.jwayfoods.com website and the JWAY Amazon.com store. *Id.* at 32.

18   Hakumo contends that the defendants have usurped and misappropriated the JWAY business

19   Hakumo built in the United States, and thus are unjustly enriched if they are permitted to retain

20   the exclusive distribution rights, ownership of the trademark, and control over the Amazon.com

21   store. *Id.*  This claim is asserted against all five defendants.

22          Welk, JWAY, Lin, and Cheng argue this claim fails because Hakumo had no reasonable

23   expectation of payment beyond the profits it made from selling Welk's products.  Welk and

1   JWAY note that the counterclaim alleges that Hakumo received 100% of the revenue and profits

2   from the sales it made in the United States, so Hakumo cannot allege that it somehow expected

3   further payment from the defendants.  Huang argues that Hakumo has not identified any benefit

4   Hakumo conferred on her.

5          Hakumo agrees to voluntarily dismiss without prejudice its unjust enrichment claim

6   against Huang. ECF No. 41 at 11.  I therefore do not address this claim further with respect to

7   her.

8          As for the other defendants, Hakumo responds that it plausibly alleged it conferred a

9   benefit on Welk and JWAY LLC by creating a $30 million business for JWAY branded products

10  in the U.S., which Welk and JWAY LLC have taken over as their own.  Hakumo asserts that it

11  had a reasonable expectation that it would benefit from its work in growing sales in the U.S.

12  beyond the profits it made, and that expectation was reasonable because Welk, Lin, and Cheng

13  "repeatedly assured Hakumo that it had the exclusive right to distribute" JWAY products in the

14  U.S. ECF No. 43 at 14.  And Hakumo notes that it has alleged that Welk and JWAY LLC now

15  control the Amazon.com store, and it would be unjust to allow Welk, JWAY LLC, Lin, and

16  Cheng to retain the store and do business using Hakumo's trademark rights in the JWAY name

17  in the U.S.

18         "Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the

19  defendant appreciates such benefit," and the defendant accepts and retains the benefit "under

20  circumstances such that it would be inequitable for him to retain the benefit without payment of

21  the value thereof." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012)

22  (quotation omitted).  A "benefit" "can include services beneficial to or at the request of the other,

23

1  denotes any form of advantage, and is not confined to retention of money or property." *Id.*

2  (quotation omitted).

3      Hakumo has plausibly alleged it conferred benefits on Welk, Cheng, Lin, and JWAY

4  LLC by building the JWAY brand in the United States from almost nothing to multi-million-

5  dollar annual sales and creating the JWAY storefront on Amazon.com.  Hakumo alleges the

6  defendants have taken over that business and online storefront despite promises that Hakumo

7  would be the exclusive JWAY brand distributor in the U.S., and that Hakumo owned the JWAY

8  trademarks in the U.S. and the JWAY Amazon.com storefront.  Whether Hakumo had an

9  expectation to receive anything more than revenues from the sales is a question of fact not

10  suitable for resolution at the dismissal stage.  I therefore deny the motion to dismiss this claim as

11  to Welk, Cheng, Lin, and JWAY LLC.

12      **E.  Hakumo has not plausibly alleged fraud and fraudulent inducement.**

13      Count six of the amended counterclaims asserts fraud and fraudulent inducement against

14  Welk, Lin, and Cheng. ECF No. 58 at 33.  Hakumo alleges that in 2020, before the parties started

15  doing business together, Lin and Cheng, acting on Welk's behalf, told Hakumo's owners that

16  Hakumo "would be Welk's exclusive distributor of JWAY branded products in the U.S." *Id.*

17  According to the amended counterclaims, no one at Walk "disclosed to Hakumo that Welk

18  could, or would, in the future unilaterally terminate Hakumo's exclusive distribution rights in the

19  U.S." *Id.*  Hakumo alleges that at the time Lin and Cheng represented that Hakumo would be the

20  exclusive distributor of JWAY products in the U.S., "neither Mr. Lin, nor Mr. Cheng had any

21  intention of actually performing and making Hakumo the exclusive distributor of all JWAY

22  branded products sold in the U.S." *Id.*  Hakumo alleges that it relied on Lin and Cheng's

23  misrepresentations and material omissions in entering into a business relationship with Welk. *Id.*

1  According to Hakumo, had it known the truth, it "would not have done business with Welk or

2  entered into any contracts with Welk and instead would have put all of its time and resources

3  into building its own brand." *Id.*

4      Welk, Lin, and Cheng argue that Hakumo does not allege fraud with particularity because

5  it does not identify the fraud beyond conclusory statements that Welk purportedly told Hakumo

6  it would be Welk's exclusive distributor of JWAY products in the United States, but that Welk

7  had no intention of making Hakumo the sole distributor. These defendants also assert that the

8  counterclaim does not identify who made the representations, or when, how, or where they were

9  made, and it improperly lumps Welk, Lin, and Cheng together. They note that by the

10  counterclaim's own allegations, Hakumo was Welk's sole distributor for JWAY products in the

11  United States for four years, so there is no reasonable inference that if the representations were

12  made as alleged, they were knowingly false when made. Finally, these defendants contend that

13  Hakumo is a sophisticated entity with millions of dollars in annual sales in JWAY products, so it

14  could not have justifiably relied on alleged oral statements that were not committed to writing.

15      Hakumo responds that it has alleged with particularity that in 2020, Lin and Cheng, on

16  Welk's behalf, told Hakumo's principals that Hakumo would be Welk's exclusive distributor of

17  JWAY products in the U.S. Hakumo also contends that it has alleged fraud by omission because

18  none of these defendants disclosed to Hakumo that Welk could or would unilaterally terminate

19  the exclusive relationship and instead take over the business Hakumo built. Hakumo contends

20  that it has not lumped these defendants together because it has plausibly alleged each made the

21  identified representations, and it need not separate them into distinct sentences because "Lin and

22  Cheng made the same identical representations." ECF No. 43 at 15. Hakumo asserts that it

23  sufficiently alleged that Lin and Cheng intentionally made the representations without the intent

to perform.  Finally, Hakumo contends that it justifiably relied by foregoing the opportunity to build its own brand.

Under Nevada law, a fraudulent misrepresentation claim consists of the following elements: (1) the defendant made a false representation; (2) the defendant knew or believed that its representation was false or the defendant had "an insufficient basis of information for making the representation;" (3) the defendant intended to induce the plaintiff "to act or refrain from acting upon the misrepresentation;" and (4) the plaintiff was damaged "as a result of relying on the misrepresentation." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998). Fraudulent inducement is fraudulent misrepresentation where the defendant specifically intends to induce the plaintiff "to consent to [a] contract's formation." *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004).  For fraud and fraudulent inducement, Hakumo must allege more than "mere failure to fulfill a promise or perform in the future"; rather, it must plausibly allege "that the promisor had no intention to perform at the time the promise was made." *Bulbman, Inc.*, 825 P.2d at 592.

To state a fraudulent concealment claim, the plaintiff must allege:

> (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant[] intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; that is, the defendant[] concealed or suppressed the fact for the purpose of inducing the plaintiff  to act differently than she would have if she had known the fact; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; (5) and, as a result of the concealment or suppression of the fact, the plaintiff sustained damages.

*Leigh-Pink v. Rio Props., LLC*, 512 P.3d 322, 325-26 (Nev. 2022) (en banc).

The parties' arguments regarding the alleged misrepresentations and omissions generally duplicate the arguments they made with respect to the promissory estoppel claims, except for

26

1  two issues.  First, the defendants contend that Hakumo could not justifiably rely on oral

2  representations because it is a sophisticated company doing millions of dollars in business, so it

3  should have gotten any agreement in a signed writing.  The defendants rely on *Georgiou Studio,*

4  *Inc. v. Boulevard Inv., LLC*, 663 F. Supp. 2d 973, 982 (D. Nev. 2009), *as amended* (Oct. 7,

5  2009), *on reconsideration in part*, No. 2:07-cv-00997-RCJ-LRL, 2010 WL 11579011 (D. Nev.

6  Apr. 2, 2010).  There, the defendant's agent assured the plaintiff that an oral agreement for

7  renting a commercial space was finalized because the defendant had approved the deal. *Id.* at

8  977, 982.  The court held that the plaintiff's reliance on the agent's assurance was unjustified

9  because the written letter of intent stated that "neither party shall be bound unless and until a

10  mutually agreeable lease is executed and delivered by both parties." *Id.* at 977.  The court stated

11  that the plaintiff thus "knew there was no contract until execution by [the defendant], so any

12  expenditures incurred, up until that point, were at [the plaintiff's] own risk." *Id.* at 982.

13      However, *Georgiou* was decided at summary judgment, not dismissal. *Id.* at 979, 982.

14  And unlike *Georgiou*, Hakumo does not allege contradictory written language that would make

15  its reliance on oral representations unjustifiable.  The defendants cite no authority that a

16  sophisticated entity cannot, as a matter of law, rely on oral representations.  And even if one

17  could characterize Hakumo's failure to get an agreement in writing as negligent, that does not

18  necessarily negate justifiable reliance. *See Collins v. Burns*, 741 P.2d 819, 821 (Nev. 1987)

19  ("[W]hen the choice is between the two—fraud and negligence—negligence is less objectionable

20  than fraud.  Though one should not be inattentive to one's business affairs, the law should not

21  permit an inattentive person to suffer loss at the hands of a misrepresenter." (quotation omitted)).

22  The issue of whether a party has justifiably relied is generally a question of fact. *Blanchard v.*

23  *Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992).  Hakumo has plausibly alleged it relied on the

1 representations by building Welk's brand rather than its own.  Whether that reliance was

2 justifiable is a fact question not suitable for resolution at the dismissal stage.

3        Second, Hakumo argues that in addition to affirmative misrepresentations, it also alleges

4 fraudulent material omissions.  In the fraud claim, Hakumo alleges that Welk, Lin, and Cheng

5 did not disclose to Hakumo "that Welk could, and would, in the future unilaterally terminate

6 Hakumo's exclusive distribution rights in the U.S. of any [JWAY] branded products," and that

7 this was an "omission of [a] material fact." ECF No. 58 at 33.  Hakumo alleges that it "relied on

8 the . . . material omissions . . . in entering into business and a contractual relationship with

9 Welk," and but for the omissions Hakumo would not have contracted with Welk and instead

10 would have built its own brand. *Id.*

11        Hakumo's fraudulent concealment allegations contain the same defect as its fraud and

12 promissory estoppel claims, namely that there are no facts to plausibly suggest that in 2020 these

13 defendants knew of and failed to disclose an intent to unilaterally terminate.  Because this claim

14 must be pleaded with particularity, Hakumo must plead all elements against each defendant with

15 particularity, including facts showing each defendant had a duty to disclose at any particular

16 point in time.  Consequently, I adopt my reasoning with respect to the promissory estoppel claim

17 and dismiss the fraudulent misrepresentation, inducement, and concealment claims with leave to

18 amend.

19

20 **F.  Hakumo has plausibly alleged tortious interference with contractual relationships.**

21       Count seven of the amended counterclaims alleges that Hakumo had "valid and

22 enforceable contractual relationships with existing brokers and customers, including but not

23 limited to Walmart, Target, Kroger, and Costco, the existence of which" all five defendants were

aware. ECF No. 58 at 34. Hakumo alleges that all five defendants intentionally interfered with Hakumo's existing contractual relationships by making false representations about Hakumo to Hakumo's brokers and customers; inducing customers to terminate business with Hakumo, "including but not limited to Coffee Bean;" and fraudulently inducing Amazon to block Hakumo's access to the JWAY store on Amazon.com. *Id.* at 34-35. Hakumo alleges that as a result of the defendants' tortious interference, "many of Hakumo's broker[s] and customers have questioned their contractual relationships with Hakumo and some customers, like Coffee Bean and Amazon, have ceased doing business with Hakumo." *Id.* at 35.

The defendants argue that this claim fails because Hakumo does not allege the existence of any contracts that were actually disrupted. The defendants acknowledge that the counterclaim identifies some retailers by name, but they assert that merely mentioning retailers does not identify an existing contract with that retailer, nor does Hakumo allege any actual breach with those customers. And they contend that even if some of those entities ceased doing business with Hakumo, the agreements could have expired or terminated on their own terms rather than a disruption or breach caused by the defendants.

Hakumo responds that it is not required to identify customers by name or plead the disrupted contracts' terms with particularity. But it notes that it identified Coffee Bean and Amazon and alleged Huang's specific acts towards Harvest Group, Next Phase, and Target. Hakumo also argues that a defendant can interfere with a contract that is terminable at will, so the defendants' assertion that the agreements might have ended of their own force is an insufficient basis to dismiss this claim. Hakumo contends that it has alleged that Welk falsely told Coffee Bean that Hakumo's supply of product would be disrupted and made false statements to Amazon that caused Amazon to block Hakumo from its sales platform.

To state a claim for intentional interference with contractual relations, a plaintiff must allege:

> (1) a valid and existing contract;
> (2) the defendant's knowledge of the contract;
> (3) intentional acts intended or designed to disrupt the contractual relationship;
> (4) actual disruption of the contract; and
> (5) resulting damage.

*J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

Hakumo has plausibly alleged the defendants' conduct actually disrupted contracts with identified counterparties. First, Hakumo alleges that Welk "contacted Hakumo's customer Coffee Bean and falsely told Coffee Bean that Hakumo's supply of product would be disrupted," and Hakumo "subsequently lost Coffee Bean as a customer . . . as a result of Welk's false statements, disparagement, and tortious interference." ECF No. 58 at 22. Hakumo also alleged that "Hakumo lost its Coffee Bean business as well as a client named 'Botrista' as a direct result" of the defendants' conduct. *Id.* at 25. And Hakumo alleges that in September 2024, Welk, through Lin, falsely told Amazon that Hakumo hijacked the JWAY storefront on Amazon.com and, "[i]n reliance on Mr. Lin's false statements, Amazon removed Hakumo's access to the JWAY storefront," thereby disrupting Hakumo's ability to sell products to customers and disrupting its relationship with Amazon. *Id.* at 25-26. Whether any of these contracts were actually disrupted or, as the defendants assert, terminated for some other reason, are questions of fact not suitable for resolution at this stage. I therefore deny the defendants' motion to dismiss this claim.

**G. Hakumo has plausibly alleged conversion and civil theft in part.**

Count ten of the amended counterclaim is asserted against Welk, JWAY LLC, Lin, and Cheng for conversion. Hakumo alleges these defendants converted (1) Hakumo's JWAY store

on Amazon.com, (2) the product listings and descriptions Hakumo created, and (3) Hakumo's Universal Product Codes (UPC) codes for the JWAY product listings on Amazon.com. ECF No. 58 at 38.  Count eleven asserts a claim for civil theft against Welk based on the same allegations. *Id.* at 38-39.

Welk, JWAY, Lin, and Cheng argue that the things that Hakumo alleges Welk converted are not "property" for purposes of a conversion claim.  Specifically, they contend that the JWAY store on Amazon.com, UPC codes, and product listings and descriptions, are intangible and not capable of exclusive possession or control based on the underlying agreements between Hakumo and third parties like Amazon and GS1 US.  In relation to this argument, the defendants ask me to take judicial notice of the standard agreements that Amazon and GS1 US make available on their websites. ECF No. 38.  Welk contends Hakumo's civil theft claim fails for the same reasons.

Hakumo responds by arguing that I should not take judicial notice of third parties' websites.  It also argues that the JWAY store on Amazon.com is a website that is property capable of being converted.  Hakumo asserts that Amazon's terms and conditions do not state that Hakumo cannot own the JWAY store on Amazon.com and Hakumo has alleged that Welk represented to Amazon that Hakumo was the sole owner of the JWAY Amazon.com store. Hakumo contends that its civil theft claim is plausibly alleged for the same reasons.

Federal Rule of Evidence 201(b) allows judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Amazon and GS1 US's websites do not fall into either category as they are not generally known within this district, and because I cannot accurately and readily

1    determine that the webpages have remained unchanged throughout the entire period of this

2    dispute through today.  Consequently, I deny the defendants' request that I take judicial notice of

3    these websites.

4        That leaves the defendants' argument that an online storefront, product listings and

5    descriptions, and UPC codes do not constitute personal property capable of conversion or theft.

6    Under Nevada law, conversion is "a distinct act of dominion wrongfully exerted over another's

7    personal property in denial of, or inconsistent with his title or rights therein or in derogation,

8    exclusion, or defiance of such title or rights." *M.C. Multi-Fam. Dev., L.L.C. v. Crestdale Assocs.,*

9    *Ltd.*, 193 P.3d 536, 542 (Nev. 2008) (simplified).  The Supreme Court of Nevada has noted "a

10   trend toward recognizing intangible property as personal property that can be converted," and it

11   "expressly reject[ed] the rigid limitation that personal property must be tangible in order to be

12   the subject of a conversion claim." *Id.* at 543.  A property right that is subject to conversion

13   "exists when (1) there is an interest capable of precise definition, (2) the interest is capable of

14   exclusive possession or control, and (3) the putative owner has established a legitimate claim to

15   exclusivity." *Id.* (holding that a contractor's license was property that can be converted).  The

16   Supreme Court of Nevada adopted this test from the Ninth Circuit's decision in *Kremen v.*

17   *Cohen*, which held that the right to use a particular internet domain name is property capable of

18   being converted. 337 F.3d 1024, 1030 (9th Cir. 2003).

19       Hakumo plausibly alleges that the JWAY storefront on Amazon.com is property capable

20   of being converted.  Hakumo alleges that it "owned the JWAY Local Flavor storefront on

21   Amazon.com." ECF No. 58 at 11.  It is reasonable to infer from this allegation that the storefront

22   is akin to a domain name in that it is a particular location that Internet users may visit and thus is

23   capable of precise definition. *See Kremen*, 337 F.3d at 1030.  Hakumo also plausibly alleges that

it owned the storefront and that its ownership was exclusive in that others can be excluded from using the storefront.  Specifically, Hakumo alleges that it previously owned the storefront but then was blocked from accessing and making sales through the site after Lin sent a complaint to Amazon. ECF No. 58 at 11, 15, 25-26.

Hakumo also plausibly alleges that the UPC codes are capable of being converted. Hakumo alleges that it "alone has owned all of the registered [UPCs] for all JWAY branded products sold in the United States." *Id.* at 11.  It is reasonable to infer that the UPC codes are capable of precise definition in that they are registered product identifiers.  Hakumo also plausibly alleges that the codes are capable of exclusive possession or control and that it owns them, as it alleges that it alone has owned those codes and registered them in Hakumo's name. *Id.* at 11, 23, 38.

With respect to Hakumo's allegations related to the "product listings and descriptions created by Hakumo," product descriptions may be capable of precise definition, but it is less clear what Hakumo means by product "listings" and whether these terms are just another way to describe the JWAY Amazon.com storefront. *Id.* at 38.  Hakumo also does not make factual allegations regarding exclusive possession or control of the descriptions or listings or that it has a legitimate claim to exclusivity beyond what it alleged in relation to the storefront and UPC codes.  Perhaps the product descriptions and listings are part and parcel of the storefront and related to the UPCs identified in those descriptions and listings.  But to the extent Hakumo intends these items to be separately convertible, it has not plausibly alleged facts under the *Kremen* test to show that they are property capable of being converted.

In sum, I deny the defendants' motion to dismiss the conversion and theft claims with respect to the JWAY Amazon.com storefront and the UPCs.  But I grant the motion as to the product listings and descriptions, with leave to amend.

**H.  Nevada Deceptive Trade Practices Act and Nevada Consumer Fraud Act**

Count twelve of the amended counterclaims asserts violations of the Nevada Deceptive Trade Practices Act (NDTPA)[9] and Nevada's consumer fraud statute[10] against all five defendants. ECF No. 58 at 39.  Hakumo alleges that the defendants have engaged in deceptive practices such as passing off Hakumo's goods and services as their own, knowingly making false representations about the source of goods, disparaging Hakumo's goods and services, and making false representations or failing to disclose material facts. *Id.*  This count is based on the same allegations regarding fraudulently inducing Hakumo to grow the JWAY brand in the U.S. and then usurping Hakumo's business and property, including the Amazon.com storefront and UPC codes, and making false representations to Hakumo's distributors and customers. *Id.* at 40.

The defendants argue this claim fails because the NDTPA does not apply extraterritorially to entities, people, and actions that took place outside of Nevada.  They also argue this claim is derivative of the other claims, and so fails for the same reasons as those claims.  And they contend that the consumer fraud claim is derivative of the NDTPA claim, so it fails for the same reasons.  JWAY and Huang further assert that some allegations, such as fraudulently inducing Hakumo to build the JWAY brand, do not seem to be directed at them but they are lumped together in the pleading.  Hakumo responds that because Hakumo is a Nevada

---

[9] *See* NRS § 598.0903 *et seq.*

[10] *See* NRS § 41.600 (creating a cause of action for victims of consumer fraud, which includes deceptive trade practices under the NDTPA).

entity, it can assert an NDTPA claim against out-of-state entities and individuals who directed

their conduct at Nevada and harmed Hakumo in Nevada.

The Supreme Court of Nevada has not addressed whether the NDTPA applies to conduct

that took place outside the state, but which is allegedly directed at a forum resident.  I therefore

must "predict[] how the state's highest court would decide the case" using "all available data." *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 586 (9th Cir. 2018), *certified question answered*, 450 P.3d 150 (2019).

Although the Supreme Court of Nevada has not addressed the NDTPA's extraterritorial

reach, it has recognized the general principle that "[a]bsent legislative direction," Nevada statutes

presumptively do not apply "beyond the state's jurisdiction" to persons or conduct that have

"little or no relation to anything done or to be done within Nevada." *Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Invs.*, 603 P.2d 270, 273-74 (Nev. 1979); *see also Ditech Fin. LLC v. Buckles*, 401 P.3d 215, 217 (Nev. 2017) (holding that a Nevada statute criminalizing

wire intercepts "does not apply when the act of interception takes place outside Nevada");

*E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) (stating a similar presumption that

"legislation of Congress, unless a contrary intent appears, is meant to apply only within the

territorial jurisdiction of the United States").  Hakumo does not point to anything in the NDTPA

or the consumer fraud statute that suggests the Nevada legislature intended either statute to apply

to conduct that took place outside Nevada.

I agree with two other judges from this court who have predicted that the Supreme Court

of Nevada would not apply the NDTPA to extraterritorial acts. *See MST Mgmt., LLC v. Chicago Doughnut Franchise Co., LLC*, 584 F. Supp. 3d 923, 932-33 (D. Nev. 2022) (predicting that the

Supreme Court of Nevada would not apply the NDPTA extraterritorially because "there is no

1    indication in the statute's text that it could be applied extraterritorially" and "there is a general

2    presumption against extraterritorial application"); *Rimini St., Inc. v. Oracle Int'l Corp.*, 473 F.

3    Supp. 3d 1158, 1226 (D. Nev. 2020) ("Given the general presumption against applying statutes

4    extraterritorially, it is likely that the Nevada Supreme Court would find that actionable conduct

5    must occur within Nevada's borders" to support an NDTPA claim.).  Hakumo argues that a

6    different rule should apply because it is a Nevada resident and the defendants' conduct was

7    directed at Hakumo in Nevada.  But the plaintiff in *Rimini Street* raised a similar argument,

8    which the court rejected. 473 F. Supp. 3d at 1225 (noting that the plaintiff argued that "because

9    it, a Nevada corporation, was the intended target of the misrepresentations . . ., it is not

10   attempting to apply the NDTPA extraterritorially").  I reject it as well.

11       Hakumo also argues that the Supreme Court of Nevada has indicated that the NDTPA

12   should be liberally construed, and additional requirements should not be "read in" to the statute.

13   ECF No. 43 at 20.  Hakumo cites *R.J. Reynolds Tobacco Co. v. Eighth Jud. Dist. Ct. in & for*

14   *Cnty. of Clark*, 514 P.3d 425, 427 (Nev. 2022) in support.  But that case did not address

15   extraterritorial application of the statute and, given the presumption against applying statutes

16   extraterritorially, it is Hakumo who is requesting I read in language that would allow

17   extraterritorial application.

18       In its response to the motion to dismiss, Hakumo does not dispute that it does not allege

19   any relevant acts that took place in Nevada, so I dismiss its NDTPA and consumer fraud claims.

20   But because it is not clear that amendment would be futile, I grant leave to amend.

21       **I.  Hakumo plausibly states a claim for a declaratory judgment.**

22       In count thirteen, Hakumo seeks declarations against Welk that: (a) "Hakumo alone has

23   the exclusive distribution rights of all JWAY branded products in the U.S.," (b) "Hakumo owns

36

the JWAY trademark in the U.S.," (c) "Hakumo owns the JWAY store on Amazon.com," and (d) "Welk cannot use Hakumo's UPC codes." *Id.* at 41-42.

Welk argues that Hakumo's declaratory judgment counterclaim relies on the same alleged oral contract as set forth in the breach of contract counterclaim. Welk thus contends that the contract is not plausibly alleged, so there is no actual controversy regarding the parties' rights and obligations. Alternatively, Welk argues that the declaratory judgment claim duplicates Hakumo's other claims.

Hakumo responds that unlike its substantive claims, its declaratory judgment claim does not seek damages and instead seeks a declaration that it is the owner of the JWAY trademark in the U.S. It also asserts that when Welk terminated the parties' relationship, it ceased selling JWAY branded products for fear Welk would sue for trademark infringement, so it needs a declaration to sell JWAY products. Hakumo contends this is not redundant of its other claims because its ownership in the trademark "can be determined whether or not Welk is shown to have breached the Exclusive Distribution Agreement." ECF No. 43 at 21. And it contends that even if the Exclusive Distribution Agreement was terminated, Welk's "promise to transfer ownership of the J WAY trademark in the U.S. to Hakumo is a right that would survive termination of the Exclusive Distribution Agreement." *Id.*

Hakumo has identified at least one basis for allowing it to pursue its declaratory judgment claim that is not completely duplicative of its substantive claims because it could clarify the parties' legal relations with respect to who can use the JWAY trademark in the U.S. going forward. *See Siino v. Foresters Life Ins. & Annuity Co.*, 133 F.4th 936, 944 (9th Cir. 2025) (stating that "even if [the plaintiff's] claims are slightly duplicative, the adjudication of both

1    could serve a useful purpose in clarifying the legal relations at issue" (quotation omitted)).  I

2    therefore deny Welk's motion to dismiss this claim.

3        **J.  Civil Conspiracy**

4        Count fourteen of the amended counterclaims asserts a civil conspiracy claim against all

5    five defendants.  Hakumo alleges that Welk "acted in concert with the other Counter-defendants"

6    to "tortiously interfere with Hakumo's current contractual and prospective relations, to defame

7    and disparage Hakumo, to unlawfully appropriate Hakumo's trade secrets and value of its

8    business, and to obtain Hakumo's know-how for the benefit of Welk and each of the other

9    Counter-defendants." ECF No. 58 at 42.  According to Hakumo, "Welk agreed with each of the

10   other Counter-defendants to engage in" this conduct, there were "agreements between and

11   among the Counter-defendants," and by the counter-defendants' "concerted action, they intended

12   to accomplish an unlawful objective for the purpose of harming Hakumo." *Id.*

13       The defendants argue that Hakumo fails to allege sufficient facts to show the defendants

14   entered into a conspiracy.  They also argue that the intra-corporate conspiracy doctrine bars the

15   claim because there are no allegations that the individual defendants acted for their individual

16   advantage.

17       Hakumo responds that the intra-corporate conspiracy doctrine does not apply because

18   JWAY LLC is a separate entity from Welk and because Hakumo did not allege that Huang was a

19   Welk or JWAY LLC employee.  Hakumo asserts that it adequately alleges what each defendant

20   did because it alleged that Welk, Lin, and Cheng participated in the conspiracy by forming

21   JWAY LLC and contacting Hakumo's brokers and customers through Huang; that Lin tortiously

22   interfered with Hakumo's Amazon store by filing a complaint with Amazon; and that Cheng sent

23   text messages to Hakumo to "lull Hakumo into believing that Welk was still proceeding in good

faith." ECF No. 41 at 10.  Hakumo notes that it alleged that Huang sent messages containing misrepresentations to Harvest Group and contacted Next Phase to interfere with Hakumo's customers and prospective business relationships.

Civil conspiracy occurs when "two or more persons undertake some concerted action with the intent to commit an unlawful objective, not necessarily a tort." *Cadle Co. v. Woods & Erickson, LLP*, 345 P.3d 1049, 1052 (Nev. 2015); *see also Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983) ("An actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.").  However, under the intra-corporate conspiracy doctrine, "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Collins*, 662 P.2d at 622.

### 1.  The intra-corporate conspiracy doctrine does not bar the conspiracy claim against Welk, JWAY LLC, and Huang, but does bar the conspiracy claim against Cheng and Lin.

Hakumo identifies two separate entities, Welk and JWAY LLC, who allegedly conspired with each other.  Thus, the intra-corporate conspiracy doctrine does not apply to bar Hakumo's conspiracy claim as to them.  And although Hakumo alleges that JWAY LLC hired Huang as a sales representative, it is possible Huang acted as an independent contractor rather than as an employee or agent.  Absent further factual development, the intra-corporate conspiracy doctrine does not bar Hakumo's claim against her either.

However, Hakumo alleges that Cheng and Lin were working as agents or employees of Welk or JWAY LLC. *See* ECF No. 58 at 13 (identifying Lin and Cheng as "Governors of JWAY FOODS LLC"), 15 (describing Lin and Cheng as "Welk's principals and owners").  Hakumo has

not alleged that Lin and Cheng were acting as individuals for their individual advantage.  To the contrary, Hakumo attributes Lin and Cheng's conduct to Welk and JWAY LLC throughout the amended counterclaims.

Hakumo argues that it has alleged "individual conduct" by Lin and Cheng, but that is not the relevant question for the intra-corporate conspiracy doctrine.  Rather, the question is whether these defendants were acting for their individual benefit as opposed to acting on the behalf of the entity for whom they are employees or agents.  Finally, Hakumo asserts that "there is no evidence to suggest that . . . Lin[] or Cheng were acting solely in an official capacity as agents or employees of Welk." ECF No. 43 at 24.  But that does not properly state Hakumo's pleading standard, which is that it must plausibly allege these individuals were not acting solely in an official capacity as agents of Welk or JWAY LLC.  I therefore grant the motion to dismiss the conspiracy claim against Lin and Cheng based on the intra-corporate conspiracy doctrine, with leave to amend.

### 2.  Hakumo has plausibly alleged a conspiracy between Welk and JWAY LLC, but not as to Huang.

To plausibly allege a conspiracy, a pleading "must answer the basic questions: who, did what, to whom (or with whom), where, and when?" *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 842 (9th Cir. 2014) (quotation omitted).  "Bare assertions of 'agreement,' or identifications of particular persons as 'co-conspirators,' will not suffice." *Id.* (simplified).

Hakumo alleges that in March 2024, Welk formed JWAY LLC for the purpose of selling and distributing JWAY branded products in the United States even though Hakumo was supposed to be Welk's exclusive distributor in the U.S. ECF No. 58 at 18.  Lin and Cheng are the

principals behind both Welk and JWAY LLC, and thus it is reasonable to infer that JWAY LLC

was aware of Welk's alleged exclusive arrangement with Hakumo.  After forming JWAY LLC,

Welk continued to negotiate a written agreement with Hakumo and gave assurances to Hakumo

that Welk would not sell JWAY products to another distributor or contact brokers or buyers in

the U.S., and Hakumo continued to perform the Exclusive Distribution Agreement. *Id.* at 19-20.

But in the meantime, Welk, "through" JWAY LLC, hired Huang as a sales representative. *Id.* at

12, 20.  And shortly after Welk gave Hakumo assurances, Huang contacted one of Hakumo's

brokers in the United States and allegedly made false representations to that broker, including

that Hakumo had no affiliation with the JWAY brand in the U.S. *Id.* at 20-22.  Huang advised

that broker that JWAY LLC would thereafter "serve as the sole distributor of our brand,

replacing Hakumo LLC." *Id.* at 21.  Welk also allegedly falsely told one of Hakumo's customers

"that Hakumo's supply of product would be disrupted." *Id.* at 22.

These allegations plausibly allege Welk and JWAY LLC had a meeting of the minds to

essentially transfer Hakumo's alleged exclusive distribution rights to JWAY LLC, to use a U.S.-

based sales representative to contact brokers and customers and supply false information or

disparage Hakumo, and to form relationships with those brokers and customers for Welk and

JWAY LLC.  However, Hakumo has not plausibly alleged that Huang was a co-conspirator.

Although Huang was the messenger for the alleged misrepresentations to the broker, Hakumo

has not alleged facts making it plausible that she conspired with Welk or JWAY LLC.  There are

no facts alleged that would support the inference that Huang knew her representations were

inaccurate or that she otherwise had a meeting of the minds with the defendants to disparage

Hakumo or usurp Hakumo's business opportunities for Welk and JWAY LLC.  I therefore

41

1    dismiss this claim against Huang without prejudice and with leave to amend, but I deny the

2    defendants' motions to dismiss this claim as to Welk and JWAY LLC.

3    **II. CONCLUSION**

4         I THEREFORE ORDER that Jennifer Huang's motion to dismiss **(ECF No. 35) is**

5    **GRANTED**.  Counter-defendant Huang is dismissed for lack of personal jurisdiction.  However,

6    Hakumo LLC has leave to amend.

7         I FURTHER ORDER that JWAY Foods LLC's motion to dismiss **(ECF No. 36) is**

8    **GRANTED**.  Counter-defendant JWAY Foods LLC is dismissed for lack of personal

9    jurisdiction.  However, Hakumo LLC has leave to amend.

10        I FURTHER ORDER that Welk Biology Co., Ltd., Yung-Hsiang Lin, and Chien-Tse

11   Cheng's motions to dismiss **(ECF Nos. 34, 37) are granted in part and denied in part** as

12   follows:

13        (1) Welk's motion is denied as to Hakumo LLC's claims for breach of contract, breach of

14   the implied covenant of good faith and fair dealing, implied-in-fact contract, unjust enrichment,

15   tortious interference with contractual relations, conversion and civil theft related to the

16   Amazon.com storefront and UPC codes, declaratory judgment, and civil conspiracy.  Welk's

17   motion is granted as to Hakumo LLC's claims for promissory estoppel, fraud, conversion and

18   civil theft related to product descriptions and listings, and deceptive trade practices.

19        (2) Lin and Cheng's motion is denied as to Hakumo LLC's claims for unjust enrichment,

20   tortious interference with contractual relations, and conversion related to the Amazon.com

21   storefront and UPC codes.  Lin and Cheng's motion is granted as to Hakumo LLC's claims for

22   promissory estoppel, fraud, conversion and civil theft related to product descriptions and listings,

23   deceptive trade practices, and civil conspiracy.

(3)  Welk, Lin, and Cheng did not move to dismiss Hakumo LLC's claims for tortious interference with prospective contractual relationships and business disparagement.  Therefore, these claims remain pending against Welk, Cheng, and Lin.

I FURTHER ORDER that Hakumo LLC may file amended counterclaims by September 19, 2025.

DATED this 20th day of August, 2025.


_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE